## Cullison v. Hartman

*Swope, Brown & Swope*, and *Daniel E. Teeter*, for plaintiffs.

*Keith, Bigham & Markley*, for defendant.

SHEELY, P. J., August 18, 1956.—The problem presented in this case is the proper distribution of the proceeds of the settlement of a wrongful death action brought by a father on his own behalf, and as trustee ad litem on behalf of his wife, to recover damages for the death of their minor son.

Marlin Cullison, aged 16 years and a student in high school, was killed in an automobile accident on January 17, 1955. The insurance carrier of the operator of the automobile involved has offered the sum of $4,500 in full settlement of all claims arising out of the accident. The funeral expenses, due to Peters' Funeral Home, amount to $698.33, and the cost of a marker, advanced by the mother, Miriam O. Cullison, amounted to $348.35, leaving the sum of $3,453.32 to be distributed to those entitled thereto. All parties concerned are satisfied with the amount of the settlement; the

dispute is between the mother and father, who are the sole survivors of decedent, as to the proportion of the distribution between them.

The father contends that the balance should be distributed to him and the boy's mother equally under the provisions of the Intestate Act of April 24, 1947, P. L. 80, while the mother contends that she is entitled to all of the proceeds. Her claim is based upon the fact that she and the father have been separated since February 1948, and decedent resided with his mother, rendering such services to her as he was able and contributing some of his summer earnings to her assistance. Since the separation, decedent has not lived with his father at any time and has contributed nothing to him. The father has been making payments for the support of his wife and son in the amount of $18 per week (originally $27 per week but reduced twice because of reduced earning capacity of the father) under order of court. At the date of decedent's death, there was an arrearage on the order of $101, or approximately five and one-half weeks in a period of about seven years.

At common law there was no right to recover for the wrongful death of a near relative; that right was conferred in Pennsylvania by the Act of April 15, 1851, P. L. 669, as amended by the Acts of April 26, 1855, P. L. 309, and June 7, 1911, P. L. 678. That act provides for the right of action and then provides that: ". . . the persons entitled to recover damages for any injury causing death shall be the husband, widow, children, or parents of the deceased, and no other relatives, and the sum recovered shall go to them in the proportion they would take his or her personal estate in case of intestacy . . .".

Under the Intestate Act of April 24, 1947, P. L. 80, where there is no surviving spouse and no issue, the

estate of decedent shall descend to his parents (20 PS §1.3), who take as tenants by entireties: Barnard Estate, 351 Pa. 313 (1945). In McFadden v. May, 325 Pa. 145, 147 (1937), it was said:

"It was entirely competent for the legislature in creating this new right of action to designate those who were to be the beneficiaries, since they thereby received something to which they were not entitled in the absence of the statute. The right to maintain the action must not be confused with the right to share in the distribution of the amount recovered. Section 2 of the Act requires all the members of the named classes surviving the decedent to be mentioned in the statement of claim. The recovery by the person or persons bringing the suit is for the benefit of the whole group, and each member thereof is entitled to a distributive share under the intestate laws". Applying this statute literally, the father is entitled to share in the proceeds.

The application of this statute has caused considerable difficulty stemming from the fact that before there can be any recovery at all in damages for the negligent death of a relative, there must be a pecuniary loss which has been defined "to be a destruction of a reasonable expectation of pecuniary advantage from the deceased": Gaydos v. Domabyl, 301 Pa. 523, 530 (1930) and cases there cited. Therefore, only one member of a class, e.g., a small child living at home, may be able to show pecuniary loss for which recovery may be had for the death of a parent, and yet, under the statute, the amount recovered is to be distributed among the entire class, including those children who live away from home and who can show no loss, in the proportion they would take the estate of decedent in case of intestacy. This necessarily results in what has been termed a "windfall" to those who

suffered no loss, and a reduction of the real damages to the person who suffered the actual loss. Many variations of the problem arising from differing family situations have been considered by the courts. See discussion in 3 Goodrich-Amram, §2201-31, supp., in which the author stated that: "Apparently the Supreme Court so far has merely approved the total exclusion of a class of survivors under the Intestate Act if no member of that class has provable damages; and in such cases has authorized a distribution as though that entire class did not exist. The court has not yet entered into the more difficult analysis of the rights of individual members of a class, in order to determine whether one or more of them should be excluded as though they had not in fact survived the decedent." The exact situation here has never been considered.

In Gaydos v. Domabyl, supra, it is said: "It was early held that 'parents' and 'children' were words used to show an intention of indicating a family relation in point of fact as the foundation of the right of action. . . . Family relation, as understood by the act, exists between parent and child when a child receives from a parent services or maintenance or gifts with such reasonable frequency as to lead to an expectation of future enjoyment of those services, maintenance, or gifts." That case involved an action brought for the death of a parent and the question involved was what damages could be proved.

Parents are, of course, entitled to the services of a child and to the child's earnings until he arrives at the age of 21 years, and the deprivation of those services would constitute a pecuniary loss for which damages could be recovered. "Where the loss is a minor child, the reciprocal rights in the parent and child to support and to receive the earnings raise a presumption of family relation and pecuniary loss": Gaydos

v. Domabyl, 301 Pa. 523, 532 (1930). Under the Act of June 26, 1895, P. L. 316, as amended by the Act of May 13, 1925, P. L. 638, 48 PS §91, suspended by Pa. R. C. P. 2250 as to precedural provisions, it is provided that: "If either the father or the mother desert their child or fail, to perform their parental duties the right to the custody, services, and earnings of the child shall belong to the other."

This same thought is carried into Pa. R. C. P. 2228 which provides that if an injury, not resulting in death, is inflicted upon the person of a minor, and causes of action therefor accrue to the minor and also to the parent or parents of the minor, they shall be enforced in one action brought by the parent or parents and the child. Either parent may sue therefor in the name of both, but if the parents live apart, the action shall be brought by the parent having the custody of the child and the control of its services.

If, therefore, the injuries to the child in this case had not resulted in death, it is clear that the mother would have been entitled to the damages therefor, since she had custody of the child and control of his services and, of course, the obligation to support him. But the wrongful death act provides that the persons entitled to recover damages for injuries causing death shall be, in this case, the parents of the deceased, and the sum recovered shall go to them in the proportion they would take his or her personal estate in case of intestacy. There is no provision in the Intestate Act of 1947 whereby a parent who has deserted a child or has failed to exercise his parental rights shall be barred from sharing in the child's estate. Such a provision is included in section 6 of that act barring a husband from sharing in his wife's estate if he had willfully and maliciously deserted her or has willfully neglected or refused to provide for her for one year,

and barring a wife from sharing in her husband's estate if she has willfully and maliciously deserted him for one year. But not even the abandonment by a father of his infant son is a bar to inheritance by the father from the child: Meisenhelter's Estate, 42 York 170 (1928).

If, then, the amount recovered be considered, for the purpose of distribution, as though it were a part of the estate of the deceased son, the father and mother would share equally, although the mother might be the only person who could prove damages and the father might have been unable to maintain an action had he alone survived the son. In support of this theory is the dictum in Gaydos v. Domabyl, 301 Pa. 523, 532 (1930), where it is stated that all parties of the class permitted to sue under the act, in this case the parents, should join as plaintiffs, but where all sue and less than all have been damaged, the verdict must be confined to the loss shown by those damaged "even though the verdict and distribution of the amount, under the act, must be made among all the children", in this case the parents.

In Armstrong v. Berk, 96 F. Supp. 182, 187 (1951), Judge Grim, of the Eastern District of Pennsylvania, considered a situation where decedent, who was divorced, left two minor children living with their mother, and whom he did not support, and a mother whom he did support. Under the Intestate Act, the children would have shared his estate to the exclusion of his mother. The court carefully analyzed the various cases dealing with the distribution of damages in cases of this type in an effort to arrive at a general rule, and stated that this rule appears to emerge:

"Where any one of a class has suffered pecuniary loss the Intestate Act will be followed and all the members of the class will share equally despite differ-

ences in pecuniary loss, but if there is a class, none of whose members can show pecuniary loss, the class will be excluded from sharing in the proceeds, and for purposes of distribution the class will be treated as though it does not exist." This, of course, means that the mother and father, being of the same class, would both share in the proceeds.

The result may seem to the mother to be inequitable, but it must be kept in mind that the parents' right to control the earnings of the child is to compensate for the parents' duty to support the child, of which duty she has been relieved. Furthermore, the father has contributed regularly to the child's support, albeit by order of court, and there is no evidence of why he was separated from the child. Furthermore, had the actions been brought as survival actions under sections 601 and 603 of the Fiduciaries Act of April 18, 1949, P. L. 512, the damages would have been payable to the estate of decedent and would have been distributable under the terms of his will, or under the provisions of the Intestate Act, in which event the father would have shared equally with the mother.

Contrary results have been reached in Ditkosky v. Schreiber Trucking Co., 82 D. & C. 319 (1951); Leiby v. Hanlon, 24 D. & C. 508 (1935), and McAlister v. Stevens, 41 D. & C. 612 (1941), but these cases have attempted to explain away the provisions of the statute that "the sum recovered shall go to them in the proportion they would take his or her personal estate in case of intestacy". If this statute results in inequities, the remedy should be provided by the legislature and not by the courts. See Goodrich-Amram, sec. 2201-31, supp., for discussion of problems which would arise if the intestacy rule is not followed.

The mother relies largely on the case of Kerr v. Pennsylvania Railroad Co., 169 Pa. 95 (1895), where

the problem involved was whether a married woman who has been deserted by her husband could maintain an action in her own name under the Wrongful Death Act to recover damages for the death of their minor child. The court held that she could, but carefully refrained from holding that the husband would be barred from sharing in the recovery since he was not a party to that action and had been given no opportunity to be heard.

We conclude that the balance for distribution shall be distributed equally to the father and mother under the terms of the statute.

And now, August 18, 1956, the settlement of the above action for the sum of $4,500 is approved, and the persons entitled to share in the damages recovered, and the proportionate share of the net proceeds to which each is entitled, are designated as Norman Woodrow Cullison, one half, and Miriam O. Cullison, one half, and it is ordered that said sum of $4,500 be distributed as follows: Peters' Funeral Home, $698.33; Miriam O. Cullison, advanced for marker, $348.35; Norman Woodrow Cullison, $1,726.66; Miriam O. Cullison, $1,726.66.

Upon payment of said amounts, it is ordered and decreed that Norman Woodrow Cullison mark the action discontinued and settled.